UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SIMON ABRAHMS,
*Plaintiff*,

v.

SIMON BAITLER,
*Defendant.*

No. 3:21-cv-01568 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Simon Abrahms ("Plaintiff" or "Mr. S. Abrahms") filed this lawsuit against Simon Baitler ("Defendant" or "Mr. Baitler") in Connecticut Superior Court, Judicial District of Hartford on October 31, 2021. Ex. 1 to Def.'s Notice of Removal, ECF No. 1-1 ("Compl."). On November 23, 2021, Mr. Baitler removed the case to this Court. Def.'s Notice of Removal, ECF No. 1 ("Notice of Removal"). Mr. S. Abrahms alleges that Mr. Baitler breached his fiduciary duty as Trustee of the Marc C. Abrahms Revocable Trust (the "Trust"). Compl. ¶¶ 7–10.

On August 26, 2022, the Court granted Mr. Baitler's motion to dismiss the original Complaint. Ruling and Order on Mot. to Dismiss Compl., ECF No. 36 ("MTD Ruling").

On October 14, 2022, Mr. S. Abrahms filed a motion for leave to amend the Complaint and attached a proposed Amended Complaint. Pl.'s Mot. for Leave to Am. Compl., ECF No. 40 ("Mot."); Proposed Am. Compl., ECF No. 40-1 ("Am. Compl.").

For the reasons explained below, the motion for leave to amend the Complaint is **DENIED**.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Background**

Mr. S. Abrahms is allegedly a beneficiary of the Trust established by his father, Marc C. Abrahms (the "decedent" or "Mr. M. Abrahms"), who is now deceased. *See* Am. Compl. ¶¶ 1–5.

The Connecticut Probate Court allegedly formally appointed Mr. Baitler as Executor and Fiduciary of the Estate of Mr. M. Abrahms, and Mr. Baitler allegedly formally accepted the appointment. *Id.* ¶ 3.

The Trust allegedly contains specific provisions (the "Transfer Instructions") concerning the timing of the transfers and distributions of Trust assets and income to the beneficiaries, Mr. M. Abrahms's four children, including Mr. S. Abrahms. *Id*. ¶ 5. The Transfer Instructions allegedly required Mr. Baitler to consider the age and maturity of the decedent's children at the time of any distributions, and to maximize the benefit to the decedent's children and minimize the risk of waste. *Id*. Specifically, the transfer instructions provide:

> Upon or as soon as is reasonably practical after such child shall attain the age of twenty-five (25) years, and at any time or times thereafter, the Trustees shall pay over and distribute to such child, outright and free of trust, so much of the principal of such child's trust, not to exceed in the aggregate one-fifth (1/5) of the principal balance thereof on such date, as such child shall request in writing at any time and from time to time. The balance of such trust shall continue to be held in trust hereunder.

*Id.* ¶ 6.

There allegedly are similar provisions for ages thirty, thirty-five, forty, and, finally, forty-five years of age, at which point, the Trust allegedly states that "the Trustees shall . . . distribute to such child, outright and free of trust, so much, including all, of the principal and accrued, accumulated and undistributed net income of such child's trust as such child shall request in writing at any time and from time to time." *Id.*

Mr. M. Abrahms allegedly needed to restrict the distribution of the Trust assets to Plaintiff because Mr. S. Abrahms has allegedly had a "troubled history" including "life-long mental, emotional[,] and psychological disorders" that have allegedly manifested in "a history of poor decision-making." *Id.* ¶ 7.

Mr. M. Abrahms allegedly chose Mr. Baitler to be a trustee of the Trust because Mr. Baitler was allegedly Mr. S. Abrahms's godfather, a long-time friend of Mr. M. Abrahms, and an experienced businessman who allegedly knew about Mr. S. Abrhams's history of mental illness and "bad decision-making." *Id.* ¶ 8.

After Mr. M. Abrahms passed away and after Mr. S. Abrahms turned twenty-five, Mr. Baitler allegedly violated the transfer instructions in the Trust when he transferred the bulk of the Trust assets to Mr. S. Abrahms, instead of spreading the distributions out over the five-year increments described in the Trust. *Id.* ¶ 9. Mr. Baitler allegedly knew or should have known that Mr. S. Abrahms intended to use the Trust assets to open an art gallery in New York City, which allegedly "could not be justified by the reasonable projections of income to be derived from such an ill-conceived business venture." *Id.* ¶ 10. This was allegedly the type of waste the Trust and its transfer instructions were designed to protect against. *Id.*

In transferring these assets in alleged violation of the Trust's instructions, Mr. Baitler allegedly advanced his own interests because he was allegedly highly compensated to perform his duties as Trustee, to the detriment of Mr. S. Abrahms. *Id.* ¶ 13.

### B. Procedural History

On October 31, 2021, Mr. S. Abrahms filed a Complaint in the Superior Court of Connecticut. *See* Compl.

On November 23, 2021, Mr. Baitler filed a notice of removal in federal court. *See* Notice

of Removal.

On December 23, 2021, Mr. Baitler filed a motion to dismiss, *see* Def.'s Mot. to Dismiss, ECF No. 13, and an accompanying memorandum of law, *see* Def.'s Mem. in Supp. ECF No. 14.

On January 26, 2022, Mr. S. Abrahms filed a memorandum in opposition to Defendant's motion to dismiss. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 19.

On February 9, 2022, Mr. Baitler filed a reply memorandum in support of his motion to dismiss. *See* Reply Mem. of Def. in Supp. of Mot. to Dismiss, ECF No. 22.

On June 28, 2022, the Court ordered the parties to provide a status report regarding the progress of the case. *See* Order ECF No. 29.

On July 1, 2022, Mr. Baitler filed a status report. *See* Def.'s Status Report, ECF. No. 31.

On July 1, 2022, Mr. S. Abrahms filed a status report. *See* Pl.'s Status Report, ECF No. 32.

On August 19, 2022, Mr. Baitler filed a motion for extension of time. Mot. for Extension of Time, ECF No. 34.

On August 26, 2022, the Court held a hearing on the pending motion to dismiss. Min. Entry, ECF No. 35.

On August 26, 2022, the Court issued a ruling and order granting the motion to dismiss and setting a deadline for Mr. S. Abrahms to file a motion for leave to file an Amended Complaint. MTD Ruling.

On October 14, 2022, Mr. S. Abrahms filed a motion for leave to file an Amended Complaint, attaching a copy of the proposed Amended Complaint. Mot.

On November 4, 2022, Mr. Baitler filed an opposition to the motion for leave to file an Amended Complaint. Def.'s Mem. of Law in Opp'n to Mot. for Leave to Am. Compl., ECF No.

41 ("Opp'n").

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion for leave to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff]

5

leave to amend." (citing *Ellis*, 336 F.3d at 127)).

### III.   DISCUSSION

Mr. Baitler argues Mr. S. Abrahms's motion for leave to amend the Complaint should be dismissed for three reasons: 1) Mr. Baitler did not breach the authority granted to him in the Trust because the actual operative Trust allows him "unfettered discretion" in these circumstances, 2) Mr. S. Abrahms failed to allege any self-dealing, fraud, or breach of the duties of loyalty or honesty, and 3) Mr. S. Abrahms's participation in the distributions bars his claim under the doctrine of *in pari delicto* and his own actions were the intervening cause of his damages. Opp'n at 9.

The Court will address only the second argument because it is dispositive.

"A fiduciary relationship creates: '(a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any manner relating to the plaintiff.'" *Kalra v. Adler Pollock & Sheehan P.C.*, No. 3:18-cv-260 (KAD), 2019 WL 319397, at *3 (D. Conn. Jan. 24, 2019) (quoting *Johnson v. Bank of America, N.A.*, No. X04HHDCV156066060A, 2016 WL 7974180 (Conn. Super. Ct. Dec. 12, 2016)); *see also Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 57 (1998) ("[B]reach of a fiduciary duty implicates a duty of loyalty and honesty . . . .").

Therefore, to plead a claim of breach of fiduciary duty, the plaintiff "must allege facts that would support a claim of fraud, self-dealing[,] or conflict of interest," such as "dishonesty, disloyalty[,] or immorality." *Hennessey v. McManus*, No. CV-10-6001205-S, 2010 WL 5030103, at *5 (Conn. Super. Ct. Nov. 8, 2010) (first citing *Sherwood v. Danbury Hosp.*, 278 Conn. 163, 196–97 (2006); and then citing *Memoli v. Galpin*, No. LLI-CV-04-4001269-S, 2006

WL 2002210 (Conn. Super. Ct. June 30, 2006)). "Self-dealing is defined as '[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty.'" *Charter Oak Lending Grp., LLC v. August*, 127 Conn. App. 428, 442 n.9 (2011) (alteration in original) (quoting Black's Law Dictionary (9th Ed. 2009)), *cert. denied*, 302 Conn. 901.

Mr. Baitler argues that Mr. S. Abrahms failed to allege any self-dealing, fraud, or conflict of interest and therefore, the breach of fiduciary duty claim must fail. Opp'n at 13. More specifically, Mr. Baitler argues that Mr. S. Abrahms's claim is based on a transaction in which Mr. S. Abrahms "was the sole beneficiary of the alleged distributions, as he received trust funds for the pursuit of his own art gallery business." *Id.* at 14. Mr. Baitler emphasizes that "the alleged distributions . . . were manifestly open, transparent and honest, as plaintiff received and used those funds as he desired." *Id.* at 14–15. In Mr. Baitler's view, Mr. S. Abrahms's allegation that the distribution of funds was premature does not constitute "self-dealing, fraud or conflict of interest, or otherwise implicate the duties of loyalty or honesty" and therefore, "do[es] not state a cognizable claim for breach of fiduciary duty under Connecticut law." *Id.* at 15.

The Court agrees.

Where a breach of fiduciary duty claim involves specific transactions or instances of misconduct, the fiduciary must have received some benefit from the transactions or misconduct to satisfy the self-dealing element. *Compare Johnson*, 2016 WL 7974180, at *3–4 (granting motion to strike where there were "allegations regarding failures to disclose, failures to properly advise, representations and misrepresentations made by [the defendants' firm] and its lawyers during the course of the legal representation," because these allegations were "only associated with the defendants' competence as attorneys" and therefore, were "insufficient to implicate the duties of loyalty or honesty so as to sustain a claim for breach of fiduciary duty"), *with Kalra*,

7

2019 WL 319397, at *4 (finding that there were sufficient allegations of self-dealing where the defendants allegedly "were dishonest and misrepresented their experience and knowledge of the law at issue . . . throughout the litigation" in order to "generate greater legal fees" because the defendants allegedly "employed tactical decisions that were known not to be in the clients' best interests" and were "motivated by their desire to receive legal fees.").

Here, even assuming Mr. Baitler was not acting in Mr. S. Abrahms's best interest when Mr. Baitler allegedly disbursed the Trust funds, there are no facts in the proposed Amended Complaint that would suggest that Mr. Baitler participated in the alleged disbursement for his own self-interest.[1]

More specifically, Mr. S. Abrahms alleges that Mr. Baitler was "advancing his own interests" because he "was highly compensated to put in the necessary time to perform his duties as Trustee." Am. Compl. ¶ 13. The general compensation Mr. Baitler received as Trustee, however, is not linked to the alleged Trust fund disbursement and therefore is not evidence that he "participated in" the alleged disbursement to "benefit [himself] instead of" Mr. S. Abrahms. *Charter Oak Lending*, 127 Conn. App. at 442 n.9 (alteration in original) (quoting Black's Law Dictionary (9th Ed. 2009)), *cert. denied*, 302 Conn. 901.

Moreover, Mr. Baitler's alleged violation of the transfer instructions, by distributing a large portion of the Trust asset funds to Mr. S. Abrahms "to establish and operate an art gallery in New York City, at very high costs, which from a business standpoint could not be justified by the reasonable projections of income to be derived," Am. Compl. ¶ 10, is "only associated with [Mr. Baitler's] competence as" Trustee, and therefore, is "insufficient to implicate the duties of loyalty or honesty." *Johnson*, 2016 WL 7974180, at *3–4; *see also MDM Golf of Gillette Ridge*

---

[1] There are no facts in the proposed Amended Complaint that suggest fraud or a conflict of interest, and therefore, the Court focuses this analysis on self-dealing.

*v. Murphy*, CV206108238, 2021 WL 3127109, at *4 (Conn. Super. Ct. June 21, 2021) (dismissing the breach of fiduciary duty claim where the plaintiff paid the defendants to represent him, and the defendants violated the rules of professional conduct because the conduct did not "go beyond mere negligence and create an inference that the defendants acted to their own benefit").

Therefore, the proposed Amended Complaint is insufficient as a matter of law, *see Murphy v. Wakelee*, 247 Conn. 396, 399–400 (1998) (finding the plaintiff's allegations that the defendant, acting as conservator, breached his fiduciary duty when he negligently failed to preserve the plaintiff's assets by "neglecting to appeal the hearing officer's decision denying . . . benefits" because the plaintiff did not allege that the defendant "engaged in self-dealing," or that the defendant's "conduct was fraudulent or that he manifested a conflict of interest"), and it would be futile to grant Mr. S. Abrahms leave to amend the Complaint.[2]

---

[2] While the Court need not reach Defendant's other arguments in support of a finding of futility, even assuming that Trust #1 is the operative trust instrument at issue, *but see* Opp'n at 10 (arguing that "the Trust provisions relied upon by plaintiff in the proposed Amended Complaint have been superseded by Trust #3, which grants Mr. Baitler 'sole, absolute, and uncontrolled' discretion to make the challenged distributions") (citation omitted), the language in Trust #1, and quoted in the proposed Amended Complaint, at best, may be construed as limiting Mr. Bailer's authority to make trust distributions to Mr. S. Abrahms on or after his twenty-fifth birthday, in the event Mr. S. Abrahms "shall request in writing [a distribution] at any time and from time to time." Ex. A to Opp'n at Art. 5.2B(2), ECF No. 41-1 ("Trust #1"); *see also, e.g.*, *Palozie v. Palozie*, 283 Conn. 538, 547 (2007) ("Where the language of the [trust instrument] is clear and unambiguous, the [instrument] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [trust instrument] must emanate from the language used . . . rather than from one party's subjective perception of the terms." (quoting *Montoya v. Montoya*, 280 Conn. 605, 612 (2006)). In other words, Mr. Bailer is limited in the amount to distribute to Mr. S. Abrahms only if Mr. S. Abrahms had specifically requested in writing a distribution, not if Mr. Bailer had a made a distribution to Mr. S. Abrahms in the ordinary course of exercising the discretion afforded to the Trustees, without having received any written request from Mr. S. Abrahms. *See* Trust #1 at Art. 5.1A ("The Trustee shall pay over one of such equal parts, outright and free of trust, to the then living descendants of each of such children not then living, in equal shares, per stirpes; subject, nevertheless, to the provisions of Section 5.2 hereof."); *id.* at Art. 5.1B ("The Trustee shall hold one of such equal parts in further trust for the benefit of each of such children then living . . . [and] shall pay or apply to or for the benefit of such child so much of the net income and principal of such child's trust as the Trustees shall deem advisable for the health, education, support and maintenance of such child. In exercising the Trustees' discretion hereunder, the Trustees shall take into account the other income or resources of or available to such child, and shall take such reasonable steps as the Trustees shall determine in the Trustees' discretion to be reasonably necessary to determine the availability and extent of such income and resources.").

Accordingly, the Court will deny Mr. S. Abrahms's motion for leave to amend the Complaint.

## IV.     CONCLUSION

For the reasons explained above, the motion for leave to amend the Complaint is **DENIED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of June, 2022.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge